UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-282-JBC

MARLYS HIGGINBOTHAM,                                                              PLAINTIFF,

V.                      **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                          DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits (DE 11, 12). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v.*

1

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *See id.*  Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II. The ALJ's Determination

At the time of review, the plaintiff was a forty-eight-year-old female with a four-year college education.  AR 19.  She alleges disability beginning on July 2, 2004, due to a cervical disc herniation and spinal stenosis.  AR 19.  The plaintiff

filed her claim for Disability Insurance Benefits on October 3, 2004, which was denied initially and on reconsideration. AR 18. After a hearing held on October 6, 2005, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 27. At Step 2, the ALJ found that the plaintiff's combination of impairments was a severe impairment.[1] The ALJ then determined that the plaintiff's impairment did not meet or equal a listing in the Listing of Impairments at Step 3. AR 27. At Step 4, the ALJ found that the plaintiff was unable to perform any past relevant work. AR 26. Finally, at Step 5 the ALJ found that with the plaintiff's residual functional capacity ("RFC"), jobs exist in a significant number in the national economy that the plaintiff can perform, and the ALJ therefore denied the plaintiff's claims for Disability Insurance Benefits at that step. AR 26, 27. The plaintiff appealed to the Office of Hearings and Appeals Council, her appeal was denied, and the plaintiff commenced this action.

**III. Legal Analysis**

The plaintiff disagrees with the ALJ's application of Step 3 and Step 5 in the five-step evaluation. Specifically for Step 5, the plaintiff argues that the ALJ erred because his RFC assessment differs from the medical opinions upon which the ALJ

---

[1] The plaintiff had the following severe combination of impairments: chronic neck, shoulder, and arm pain secondary to degenerative disc disease at C4-C5, C5-C6, and C6-C7; status post discectomy and fusion at C6-C7; multiple myalgias, rule out fibromyalgia; and mild obesity. AR 27.

based his assessment.  In particular, she urges, the ALJ erroneously discounted the plaintiff's pain testimony, the opinions of her treating physicians, and the opinion of the independent medical examiner, Dr. Saranga.   The plaintiff also argues that the ALJ improperly used the Vocational Expert's ("VE") testimony to determine she is able to work.  The court will consider these arguments in turn.

**A.  Step 3: Listings of Impairments**

The plaintiff argues her disability does meet or is medically equal to a 1.05C listed impairment in Appendix I, Subpart P, Regulation No. 4.  However, this listing applies to amputations[2] and the plaintiff discusses only vertebral disorders.  The Commissioner suggests the plaintiff may be referring to listing 1.04C.  That listing section requires:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.04.  The plaintiff must show evidence that she meets all the elements of the listed impairment.  *See Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1986)(Almost establishing disability is not

---

[2] Amputation.  One hand and one lower extremity at or above the tarsal region, with inability to ambulate effectively, as defined in 1.00B2b.  20 C.F.R. pt 404, subpt. P, app. 1 Listing 1.05C.  There is no evidence of amputation in the record.

enough); *Hale v. Sec'y of Health and Human Services,* 816 F.2d 1078 (6th Cir. 1987)("lack of evidence indicating the existence of all the requirements of [an appendix listing] provides substantial evidence to support the Secretary's finding that the claimant did not meet the Listing" (court summarizing *King v. Heckler,* 742 F.2d 968 (6th Cir. 1984)).

The plaintiff has not shown that her impairments meet all the elements of Listing 1.04C.  The court finds the ALJ's application of Step 3 is supported by the record.[3]

**B. The RFC Determination**

The plaintiff claims that, in light of the record, the ALJ erroneously found that the plaintiff could perform sedentary work.  The plaintiff argues the ALJ failed to give proper weight to her treating sources' opinions in determining her RFC.  However, the plaintiff does not specify any treating source and instead merely refers to a summary which lists her physicians, Dr. Brammell, Dr. Kiefer, Dr. Rasheed MD, Dr. Jackson MD.  The opinions of a treating physician are entitled to significant deference. *See, e.g., Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).  If a medical opinion of a treating physician is not contradicted, it is entitled to complete deference. *Cohen v. Sec'y of Dept. of Health and Human Servs,* 964 F.2d 524, 528 (6th Cir. 1992).  The ALJ refers to all

---

[3] "Other disc spaces show no evidence of any focal herniation disc material or spinal stenosis."  AR 152.  "There is no evidence of significant spinal stenosis."  AR 167.  At the C3-C4, C6-C7, C7-T1, T1-T2, and T2-T3 level there is no spinal stenosis.  AR 179.  There is no significant spinal stenosis at C4-C5 level. *Id.*

four doctors and their findings in his opinion. Three of those doctors, Dr. Kiefer, Dr. Jackson, and Dr. Rasheed, imposed no limitations. AR 24.

Dr. Brammel opined that the plaintiff would need to be completely off work indefinitely. AR 21. The ALJ explicitly cited this recommendation in his opinion. AR 21. While treating physicians' medical opinions have controlling weight, medical opinions "are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairments(s), and [her] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Thus, other issues are reserved to the Commissioner, such as the decision of whether the plaintiff meets the statutory definition of disability. A statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that the ALJ will determine the claimant is disabled. 20 C.F.R. §404.1527(e)(1). Therefore, the ALJ did afford Dr. Brammel's opinion appropriate weight.[4]

Appropriate weight was also afforded to Dr. Snider's restrictions of no work above the shoulder; no motor vehicle operation at work; 20-pound push/pull limit; and 10-pound lift limit. AR 140. The RFC assessment incorporates those restrictions. After considering Dr. Snider's restrictions, the lack of limitations prescribed by other physicians, and the other reports in the record, the ALJ

---

[4]Likewise, Dr. Kiefer's 2/11/03 note excusing the plaintiff from work with no medical findings included with the note is not entitled to controlling weight. AR 192.

6

concluded that the plaintiff could "perform a restricted range of sedentary work"[5] that restricted her to sitting and standing at intervals, occasionally pushing or pulling with her upper extremities, occasionally stooping, bending, or twisting, but never kneeling, with restricted frequent turning of her head, and no work with her hands above her shoulders, and no commercial driving.[6]  AR 25.  This RFC determination is consistent with the remainder of the medical evidence of record.  The court finds that the ALJ properly weighed the plaintiff's physicians' opinions and used those opinions in his assessment of the plaintiff's RFC.

The plaintiff argues a sedentary job is inappropriate because she does not have good use of her hands.  While most unskilled sedentary work requires good use of the hands and fingers for repetitive finger actions, there is no requirement that the claimant must have good use of her hands.  Social Security Rule 83-10.  Further, the limitation of "occasional pinching, grasping, fingering or feeling with the left, non-dominant hand" was taken into account in the plaintiff's RFC and included in the hypothetical posed to the vocational expert.  AR 331, 333.  The court finds the ALJ's finding that the plaintiff could perform restricted sedentary

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  AR 26.

[6] The ALJ also concluded that the plaintiff could occassionally pinch, grasp, finger, or feel with her left non-dominant hand; she could never climb ropes, ladders, or scaffolds; there could be no concentrated vibration; no work at heights or around industrial hazards; and she would require simple, entry-level work with no frequent changes in work routines.

work based on her RFC was supported by substantial evidence.[7]

## C.  The ALJ's Credibility Assessment of the Plaintiff

The plaintiff argues the ALJ erred in his determination of the plaintiff's credibility.  The Commissioner is required to consider all of a claimant's symptoms, including pain, in determining whether she is disabled.  20 C.F.R § 404.1529(a).  Before these symptoms will lead to a finding of disability, however, medical signs must exist which show the claimant has an impairment which could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b).  When such medical signs are present, the Commissioner must then evaluate how the intensity and persistence of the symptoms affect the claimant's ability to work.  20 C.F.R. § 404.1529(c).  In performing this inquiry, the ALJ must consider the objective medical evidence, evidence of the claimant's daily activities, the frequency and intensity of the claimant's pain, any precipitating or aggravating factors, any medications taken to alleviate the pain, and any other measures taken to remedy the claimant's pain.  *See Felisky*, 35 F.3d at 1039-40; 20 C.F.R. § 404.1529(c)(3).  Although an ALJ's credibility findings are to be accorded significant deference, an ALJ's assessment of a claimant's credibility must be supported by substantial

---

[7]The plaintiff also argues she is unable to sit for a total of 6 hours in an 8-hour workday.  Social Security Ruling 96-9p explains "in order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday."  The plaintiff cites portions of the administrative record to support this argument, but those pages do not evidence an inability to sit for a period of six hours.  Further, the RFC includes a "sit/stand option at one hour intervals."  AR 25.

8

evidence.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ found the record "does not support the claimant's testimony regarding the intensity and persistence of her symptoms."  AR 23.  The record indicates the ALJ's decision relied on the plaintiff's activities: the plaintiff's ability to take care of her personal needs, shop, cook, do light household chores, use the computer on a regular basis, attend church, and go out to restaurants and movies.  AR 23.  "As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain."  *Blacha v. Sec'y of Health and Human Services,* 927 F.2d 228, 231 (6th Cir. 1990).

The plaintiff refers to Dr. Saranga's evaluation as evidence that supports her testimony of pain.  The ALJ stated in his opinion that there was no reported testing for fibromyalgia and no trigger-point analysis.  AR 25.  Dr. Saranga did opine that the plaintiff has fibromyalgias with tender points.  AR 212.  However, Dr. Saranga is a state agency medical consultant, not a treating physician; thus his opinion would not be entitled to controlling weight.  Social Security Rule 96-2p.  Further, the ALJ reached a *more restrictive RFC* assessment than Dr. Saranga, who recommended the plaintiff had unlimited capabilities to push and pull, she could frequently lift 10 pounds and occasionally lift 20 pounds, she could sit 6 hours per day, and had unlimited fingering capabilities.  AR 211, 213.  Dr. Saranga also found the plaintiff's symptoms to be only partially credible.  AR 215.

The ALJ's assessment of the plaintiff's credibility and pain was based on

substantial evidence, including the ALJ's assessment of the plaintiff's testimony, her daily activities, and the medical record; therefore, the court will not disturb it.

**D.     The Testimony of the Vocational Expert**

Once the ALJ determined the plaintiff did not have the RFC to perform her past relevant work, "the burden shifted to the Secretary to show that [the] plaintiff possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987). There must be substantial evidence that the plaintiff has the vocational qualification to perform specific jobs to meet this burden. *Id.* For the testimony of a vocational expert to "prov[e] the existence of a substantial number of jobs that [a] plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes the plaintiff" in all relevant and significant respects. *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). At the hearing, the ALJ posed a hypothetical question to the vocational expert based on assumptions about the plaintiff's RFC drawn from the opinions of various doctors. More specifically, the ALJ asked the vocational expert to assume

> a person of [the plaintiff's] age, education and experience, with the capacity to perform at a sedentary exertional level, requiring a sit and stand option at one hour intervals, no climbing of ropes, ladders or scaffolds, no kneeling, occasional stooping, bending or twisting, occasional pushing, pulling with the upper extremities, occasional pinching, grasping, fingering or feeling with the left, non-dominant hand, no work with hands above shoulder level, no commercial driving, requires entry level work with no frequent changes in work

routines, no work requiring frequent movement of the head, no work around concentrated vibration or industrial hazards.

AR 331-332. The VE testified that there are jobs in the sedentary area in the clerical field.[8] The plaintiff argues the ALJ ignored other portions of the VE's testimony which concluded jobs were not available. For instance, if the VE assumed that the plaintiff needed to lie down during the day or miss many days of work, the clerical jobs would not tolerate such a restriction. However, the plaintiff has not cited any specific portion of the record, other than Dr. Brammel's opinion that the plaintiff should not work, to indicate why the ALJ's hypothetical did not adequately describe her limitations.

The plaintiff also points out that the VE testified if the plaintiff's testimony were credible there would be no jobs. As discussed, the ALJ found the record did not support the plaintiff's testimony regarding her symptoms. "If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *Blacha,* 927 F.2d at 231 (VE testified that if plaintiff's testimony were accepted entirely, then he would be disabled, but based on the assumptions in the hypothetical question presented by the ALJ, he would not be disabled.).

In contrast to the plaintiff's general assertion of error, the ALJ's hypothetical is supported by the evidence of record. For example, Dr. Snider opined that the

---

[8]Specifically, in the Kentucky area there are 4,000 jobs available as an information clerk or hospital admitting clerk and 6,000 jobs available as an insurance claims clerk. AR 333.

11

plaintiff would be able to push or pull no more than 20 pounds and lift no more than 10 pounds.  AR 142.  Three other treating physicians, Dr. Kiefer, Dr. Jackson, and Dr. Rasheed, imposed no limitations.  AR 24.  The court finds that the ALJ's hypothetical, the vocational expert's response, and the ALJ's ultimate opinion were supported by and consistent with substantial evidence in the record.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 11) is **DENIED**.


Signed on  December 12, 2007

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY